**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARISSE LYONS, | ) | CASE NO. 1:20-cv-1567 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.,* | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Charisse Lyons (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

On December 12, 2017 and December 27, 2017, respectively, Plaintiff applied for DIB and

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

SSI, alleging a disability onset date of April 6, 2016. (R. 12, Transcript ("Tr.") 244-256).[2] The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 160-193). Plaintiff participated in the hearing on April 3, 2019, was represented by counsel, and testified. (Tr. 33-68). A vocational expert (VE) also participated and testified. *Id*. On May 10, 2019, the ALJ found Plaintiff not disabled. (Tr. 12-32). The Appeals Council denied Plaintiff's request to review the ALJ's decision on May 14, 2020, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6).

Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13 & 15). Plaintiff asserts the ALJ erred when evaluating the opinions from her treating physician. (R. 13).

## II. Evidence

### A. Relevant Medical Evidence[3]

**1. Treatment Records**

Jessica R. Griggs, D.O., treated Plaintiff at the Department of Veterans Affairs (VA) since August 24, 2012. (Tr. 510). On June 15, 2016, at Plaintiff's first visit with Dr. Griggs since the alleged onset date, Dr. Griggs noted that plaintiff had a history of chronic low back pain, diabetes, and hypertension. (Tr. 549). On physical examination, Plaintiff was 5'7" tall and weighed 198 pounds, and the examination results were unremarkable except for decreased range of motion (ROM) in the back. (Tr. 552). The assessment included low back pain without sciatica,

---

[2] A prior application for DIB and SSI, filed on December 4, 2013, was denied after a hearing by an ALJ's decision rendered on April 5, 2016. (Tr. 72-82).
[3] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

neck pain, and cervicalgia. *Id*.

Blaine Bafus, M.D., saw Plaintiff, on July 5, 2016, upon referral from Dr. Griggs for a chief complaint of bilateral hand tingling which "[s]he states…has been going on for 3 years … [and] [s]he rates the pain as 3/10." (Tr. 380). She reported not being interested in injection treatment. *Id*. On examination, Dr. Bafus noted "[l]ooking at her hands, there is no atrophy or deformity. She had diminished sensation to light touch in the left thumb. She had a positive flexion compression test bilaterally. Negative Tinel. No thenar atrophy. Thenar strength 5/5, first dorsal interosseous and abductor digiti minimi 5/5. Neck range of motion limited, also produces the left-sided upper arm paresthesias." *Id*. Diagnostic studies from June of 2016 were "interpreted as evidence for bilateral sensorimotor median mononeuropathy at or about the wrist primarily demyelinating in nature, moderate in severity, left slightly worse without evidence of active denervation." *Id*. Dr. Bafus diagnosed bilateral carpal tunnel syndrome with some neck pathology. *Id*. She reported wanting to try a right-sided carpal tunnel release surgery in the future. *Id*.

On September 8, 2016, Plaintiff saw Samuel Rosenberg, M.D., for complaints of neck, arm, and hand pain. (Tr. 589-594). After an EMG and sensory and motor nerve conduction studies, Dr. Rosenberg concluded that Plaintiff had "bilateral sensorimotor median mononeuropathy at or about the wrist. primarily demyelinating in nature, moderate in severity, left slightly worse, without evidence of active denervation." (Tr. 593). On examination, Plaintiff had an antalgic gait, very weak bilateral biceps, and 1st and 2nd finger flexors, and decreased sensation in the first, second, and middle finger. (Tr. 594). Dr. Rosenberg's impression included bilateral C6 radiculopathy with some myelopathic signs, bilateral carpal tunnel syndrome, and diabetes with neuropathy. *Id*. He recommended physical therapy and a cervical MRI. *Id*. Per her testimony,

Plaintiff never underwent physical therapy for her back or neck. (Tr. 48).

On September 15, 2016, Dr. Griggs' physical examination yielded unremarkable results, including a symmetric back with normal ROM and no tenderness. (Tr. 371).

On December 9, 2016, Plaintiff was seen by resident Timothy Golemgeski, M.D., and Dr. Griggs. (Tr. 365). She complained of a wrist and neck pain, and wanted a referral for a colonoscopy. (Tr. 361-362). On examination, Plaintiff had a supple neck with normal ROM, normal ROM on musculoskeletal examination with no edema, normal ROM and no tenderness in the left shoulder and wrist, normal ROM in the left wrist and cervical back with tenderness, normal ROM with no tenderness in the thoracic and lumbar back, 4/5 strength in the upper extremities bilaterally, and normal sensation in the left upper extremities. (Tr. 364). The attending physician recommended a neurosurgery consultation. (Tr. 365).

On October 4, 2016, an MRI yielded an impression of "[f]ocal disk extrusion at the C4-5 level results in eccentric nerve root compression on the left. Disc osteophyte complexes at the C5-6 and C6-7 levels resulting in moderate cord impingement without severe compression" and no abnormal cord signal. (Tr. 434). Two days later, Plaintiff saw nurse practitioner Mary Lieder and reported pain in her knees and neck that she rated as a 3 to 4 in intensity on a ten-point scale. (Tr. 614). She had a steady gait. *Id*.

On January 3, 2017, Plaintiff saw NP Lieder, and reported pain in her knees and neck that she rated as a 3 to 4 in intensity on a ten-point scale. (Tr. 646). She had a steady gait and slept up to 14 hours per day. *Id*.

On April 27, 2017, Plaintiff reported no musculoskeletal or neurologic symptoms. (Tr. 703). On physical examination, Dr. Griggs noted no pain and normal ROM. *Id*. Dr. Griggs assessed Type 2 diabetes mellitus without complication and without long-term current use of

insulin, as well as cervicalgia. (Tr. 703).

On April 28, 2017, Plaintiff saw nurse practitioner Karen Collins and reported pain in "back, left side" rated seven in intensity on a ten-point scale. (Tr. 718). She had a steady gait. *Id*.

On July 24, 2017, Plaintiff saw Melanie Malec, M.D., after she could not get an appointment with Dr. Griggs. (Tr. 348). Dr. Malec would not refill her chronic pain medications indicating she would have to see Dr. Griggs. *Id*. Plaintiff became upset and confrontational, and no longer wanted a physical. *Id*.

On August 21, 2017, Plaintiff saw Dr. Griggs for health management and prescription refills. (Tr. 736). Plaintiff again reported no pain, weakness, numbness, swelling or gait problems. (Tr. 737). On physical examination, Plaintiff had normal ROM and no neurological deficits. *Id*.

On November 6, 2017, Katy Lalone, M.D., noted Plaintiff had central obesity, and that she ambulated without difficulty. (Tr. 776). She diagnosed PTSD, recurrent major depressive disorder with psychosis, and insulin dependent diabetes mellitus poorly controlled. (Tr. 778).

On November 17, 2017, Plaintiff reported to Dr. Griggs "difficulty doing household chores due to pain" and requested a referral for Home Care Certification (HCC). (Tr. 786). On physical Examination, Plaintiff had decreased ROM in the neck and back, but was otherwise unremarkable. (Tr. 789). Plaintiff's weight was 207 lbs. *Id*.

On December 15, 2017, Dr. Griggs completed a "Home Care Certification" for plaintiff, indicating that home health services (skilled nursing, medical social services and medical supplies) were medically necessary because Plaintiff was homebound due to diabetes mellitus, osteoarthritis, dorsalgia, cervicalgia, hypertension, asthma, and bipolar disorder. (Tr. 338).

On January 19, 2018, Plaintiff saw Marc Slomovitz, DPM, for a diabetic foot exam (Tr.

5

797-800). He assessed "min neuropathy (itchy/burning) doesn't appear to be tinea pedis," and prescribed a lotion with a follow up again in one year. (Tr. 800).

On February 16, 2018, Plaintiff saw Gaby Khoury, M.D., for refills of her medications and a flu shot. (Tr. 805). Dr. Griggs was not available that day. (Tr. 808). Dr. Khoury noted that Plaintiff had chronic neck pain and "usually gets Norco 120 tablets a month from Dr. Griggs. I told her that I can give her 10 tablets to last her until Dr. Griggs comes back in 3 days (on Monday) and she became very disrespectful and said that her visit here was for nothing and I am nothing." *Id*.

On April 27, 2018, Dr. Griggs reviewed Plaintiff's symptoms and she was negative for neurologic symptoms. (Tr. 816). She reported sleep disturbance, anxiety, and depression. *Id*. Dr. Griggs' physical examination revealed decreased ROM in the back and left knee edema. (Tr. 820). Dr. Griggs increased Plaintiff's hypertension medication, and refilled he pain medications unchanged. *Id*.

On June 28, 2018, Plaintiff presented to Dr. Griggs with a history of hypertension, allergic rhinitis, gout, and esophageal reflux. (Tr. 840). On review of symptoms, Plaintiff was negative for any musculoskeletal, neurologic, or psychiatric symptoms. (Tr. 841). On objective examination, Plaintiff had normal ROM in her back and extremities, no focal deficits, and no pain or tenderness was noted. *Id*.

On September 26, 2018, Plaintiff presented to Dr. Griggs with a history of hypertension, diabetes, and chronic low back pain. (Tr. 859). Plaintiff stated her pain medication was working well. *Id*. On physical examination, Plaintiff was in no acute distress and back examination revealed "Back symmetric, no curvature. ROM decreased. No CVA tenderness." (Tr. 863). There was also no edema in the extremities. *Id*.

On December 26, 2018, Plaintiff saw Dr. Griggs, and requested the doctor complete a form. (Tr. 869). The results of the physical examination remained unchanged. (Tr. 873).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On February 22, 2018, Herschel Pickholtz, Ed.D., performed a clinical interview and mental status examination at the request of the Division of Disability Determination and concluded Plaintiff was "not a fully reliable and accurate respondent and informant." (Tr. 499-508). He noted Plaintiff's gait and posture were unremarkable. (Tr. 503). In understanding, remembering, and carrying out instructions for simple work activities, Plaintiff had no serious impairment and "slight impairment at worst" with respect to more complex work activities. (Tr. 507). "Her capacities to perform l to 2-step tasks work do not reflect any impairment. Her overall capacities to perform 3 to 4 step tasks suggest a slight impairment at worst." *Id*. Dr. Pickholtz noted Plaintiff's performance suggested exaggeration and selective motivation. *Id*. Plaintiff had a "slight impairment at worst" with respect to her ability to respond to supervision and coworkers in a work setting. *Id*. With respect to her abilities and limitations in responding to work pressures in a work setting, Plaintiff was again assessed as having only a "slight impairment at worst." *Id*.

On February 27, 2018, state agency physician David Knierim, M.D., reviewed evidence of record and completed a physical residual functional capacity (RFC) assessment. (Tr. 104-106). He opined that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently; sit for six hours and stand/walk six hours each in an eight-hour workday; only frequently push/pull with the arms; no more than frequent reaching overhead, handling, fingering, and feeling; frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; no climbing ladders/ropes/scaffolds; and a need to avoid concentrated exposure to pulmonary irritants and exposure to all hazards. *Id*.

On the same date, state agency psychologist Juliette Savitscus, Ph.D., found that new and material evidence precluded an adoption of the psychiatric review technique (PRT) and mental RFC findings from a prior decision dated March 31, 2016. (Tr. 102). Dr. Savitscus found that evidence "suggests changed and improved functioning since the time of the ALJ['s] [decision]." *Id*. Dr. Savitscus explained as follows:

> The ALJ noted moderate limitations in C/P/P and restricted the clmt to simple tasks and no contact with the public. However, at the current CE, the clmt describes the ability to solve multi-operational math problems, read and understand the Bible, can manage her own house, and run her own errands. She takes care of children twice a week, goes to church twice a week and talks on the phone daily. Noted good eye contact with the examiner, no crying spells, no hx of SI/HI and she has never been hospitalized for MH. Dx by the examiner were classified as in partial remission and mild.
>
> Taken together, psychological MDI pose no more than mild limitations. Not Severe.

(Tr. 102).

On May 22, 2018, state agency physician Gail Mutchler, M.D., reviewed evidence of record and completed a physical RFC assessment that mirrored Dr. Knierem's earlier assessment. (Tr. 135-138).

On December 26, 2018, Dr. Griggs completed a checkbox-style Physical Medical Assessment form indicating Plaintiff's symptoms are neck and back pain. (Tr. 510-513). She checked boxes indicating Plaintiff would likely be off task 25% or more of a workday, sit for less than two hours and stand/walk less than two hours in an eight-hour workday, and lift 10 pound frequently and 20 pounds occasionally. (Tr. 510). Dr. Griggs also stated that Plaintiff would miss 20-25 days of work per month, and required an assistive device without which she could walk only one block. (Tr. 510-511). She could frequently reach, handle, finger, feel, and push/pull bilaterally and only occasionally operate foot controls bilaterally. (Tr. 511). Dr. Griggs opined

8

Plaintiff could not perform any postural activities (climbing, balancing, stooping, kneeling, crouching or crawling), and could not tolerate any exposure to things like hazards, extreme temperatures and pulmonary irritants. (Tr. 512). Where the form asked Dr. Griggs to identify the "particular medical or clinical findings (i.e. physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain etc.) which support your assessment or any limitations and why the findings support the assessment[,]" the doctor left that section blank. (Tr. 513).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not

performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since April 6, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: spine disorders, asthma, peripheral neuropathy, and osteoarthritis and allied disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can frequently reach overhead bilaterally and frequently handle bilaterally, frequently finger bilaterally, and frequently feel bilaterally. She can frequently climb ramps and stairs, never ladders, ropes, or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl. She can frequently push and pull with the bilateral

        upper extremities. She can never work at unprotected heights and near dangerous moving machinery. She can only frequently work in humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on ***, 1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 6, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18, 20-21, 26-28).

### V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial

evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Sole Assignment of Error— Weight Ascribed to Dr. Griggs' Opinions**

In the sole assignment of error, Plaintiff asserts the ALJ failed to properly evaluate the opinions of her treating source, Dr. Griggs, and erred by finding the doctor's opinion less persuasive. (R. 13, PageID# 955). Plaintiff contends "the ALJ's evaluation of Dr. Griggs' opinions does not accurately reflect what is in the record." *Id*.

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). To the contrary, "the ALJ is charged with the

responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence … [and] has final responsibility for deciding an individual's RFC." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013); *see also Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) ("An example of a good reason is that the treating physician's opinion is 'unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.'") (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a medical provider's opinion because it too heavily relied on the patient's complaints).

Plaintiff's DOB and SSI claims were filed on December 12, 2017 and December 27, 2017 respectively. (Tr. 244-256). The "treating physician rule" was eliminated by a change in social security regulations that applies to all claims filed after March 27, 2017, as the regulations no longer use the term "treating source," instead utilizing the phrase "your medical source(s)." 20 C.F.R. § 416.920c. The change is not merely semantic, as the regulation explicitly states that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from your medical sources."[4] *Id*. As explained by the SSA, "[c]ourts reviewing claims under [the old] rules … focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision…. [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial

---

[4] "Prior administrative findings" refers to the findings of the State Agency physicians or psychologists. 20 C.F.R. § 416.913(a)(5). The regulations differentiate between "medical opinions" and "prior administrative medical findings," but do *not* ascribe greater significance to either, and both are evaluated utilizing the same factors. 20 C.F.R. § 416.920c(c).

evidence standard of review, which is intended to be highly deferential standard to us." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Therefore, although Dr. Griggs was a treating physician, that no longer requires any heightened standard of articulation before an ALJ may find the opinion unpersuasive.

The new regulations, however, are not devoid of any requirements regarding an ALJ's duty to explain the weight assigned to the various medical opinions of record. An ALJ is required to articulate how he or she considered the factors of "supportability" and "consistency," which are the two "most important factors" in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 416.920c(b) & (c). With respect to the opinion of Dr. Griggs, after recounting the contents of the opinion, the ALJ found as follows:

> I find this opinion less persuasive. I note the duration of treatment starting in August 2012 on a quarterly basis (Ex. B3F/2). However, I also note Dr. Griggs provided primary care and is not a specialist or provided specialized treatment other than routine office visits for and medication refills. **In addition, Dr. Griggs left the space blank for medical or clinical findings to support her opinion and merely circled answers and checked boxes on this opinion form. Further, I find this opinion regarding, in particular, being off-task and reference to a required assistive device, is inconsistent with examinations that showed that claimant generally maintained normal strength and ambulated with a steady gait and without difficulty** (Ex. B1F/34, B2F/6, B4F/101, 120, 133, 153, 205, B4F/205, 263).

(Tr. 25-26) (emphasis added).

The ALJ plainly found Dr. Griggs' opinion unpersuasive as a whole. Plaintiff claims the ALJ only found Dr. Griggs' opinion was inconsistent as it related to her "inability to stay on task and require an assistive device …." (R. 13, PageID# 958). Specifically, Plaintiff claims the ALJ's decision does not address Dr. Grigg's opinion with respect to sitting, standing, and walking restrictions. *Id*. at PageID# 959. Plaintiff's argument, however, is untenable when

considering the above bold language in the ALJ's decision—identifying the opinion was not supported by medical records and was inconsistent with medical examinations. (Tr. 25-26)

Under the revised regulations, medical opinions, as well as prior administrative findings, are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; relationship with the claimant; length of treatment; frequency of examination; purpose and extent of treatment; examining relationship; specialization; and "other factors." *Id*. Again, "supportability" and "consistency" are the "most important factors," and an ALJ may, but is not required to, discuss how he or she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ did discuss some of these factors, such as the examination relationship and a lack of specialization despite treating status, but found they did not render the opinion persuasive. Rather, the ALJ focused primarily on the main factors.

Further, Plaintiff appears to misconstrue what the regulations mean by "supportability," by arguing that "[w]hile it is true that Dr. Griggs did not provide a narrative or explanation in the medical source statement, that does not mean that her opinions are not supported." (R. 13, PageID# 957). Supportability is defined as "[t]he more relevant the *objective medical evidence and supporting explanations **presented by** a medical source* are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1) (emphasis added). Dr. Griggs offers *no supporting explanation* in her opinion, nor does the doctor identify objective medical evidence to support the limitations assessed.[5]

---

[5] The Sixth Circuit Court of Appeals had observed that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best' and meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 475 (6th Cir. 2016) (*citing Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010)). The *Hernandez* decision

Plaintiff's citations to treatment records not actually cited or identified by the medical source does not render an opinion "supportable," as the regulations specifically look to a medical source's own presentation of objective evidence and/or supporting explanations rather than a claimant's *post hoc* presentation. The court notes the ALJ's observation that "Dr. Griggs left the space blank for medical or clinical findings to support her opinion and merely circled answers and checked boxes on this opinion form" is an entirely accurate characterization of the opinion. (Tr. 25, 510-513).

Turning to the consistency factor, the regulations state "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2). The ALJ unambiguously questioned the consistency of Dr. Griggs' opinion with the record as a whole, citing numerous medical visits documenting no issues with Plaintiff's gait. (Tr. 26, citing Tr. 364, 503, 614, 633, 646, 666, 703, 776).[6] Finally, the ALJ found the opinions of the state agency physicians persuasive, which supported a physical RFC for a limited range of light work. (Tr. 24). Plaintiff's brief does not meaningfully argue that the ALJ failed to properly consider the

---

explained that "[e]ven if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error" where the opinion in question was an unsupported check-box opinion. *Id.*; *accord Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 441 (6th Cir. 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks" was suspect under *Hernandez*); *Toll v. Comm'r of Soc. Sec.*, No. 1:16cv705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) (finding that "even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis).
[6] The ALJ recognized earlier in the decision that Plaintiff's gait was not always exclusively unremarkable, noting at least one instance of an antalgic gait. (Tr. 23, citing Exh. B4/81).

State Agency opinions, referred to as prior administrative medical findings under the new regulatory framework. Reading the decision as a whole, the ALJ plainly found Dr. Griggs' opinion was inconsistent with these prior administrative medical findings—a proper consideration under the new regulations when weighing consistency.

To the extent Plaintiff requests the court override the ALJ's reliance on the State Agency medical opinions—who found Plaintiff was capable of a limited range of light work—and find the ALJ erred by not ascribing greater weight to Dr. Griggs' opinion, the court declines to do so. This court's role in considering a social security disability appeal does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

Plaintiff's sole assignment of error is without merit.

### VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
United States Magistrate Judge

Date: January 10, 2022

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** *See Berkshire v. Beauvais,* 928 F. 3d 520, 530-31 (6th Cir. 2019).